# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

TERRELL COBBS, R24492,

      Petitioner,

      v.

VICTOR CALLOWAY, Warden,
Danville Correctional Center,

      Respondent.

Case No. 16-cv-10380

Judge John Robert Blakey

## MEMORANDUM OPINION AND ORDER

This case comes before this Court on the petition for a writ of habeas corpus filed by *pro se* Petitioner Terrell Cobbs pursuant to 28 U.S.C. § 2254. Petitioner was charged with and found guilty of second-degree murder following a bench trial before Judge James B. Linn in the Circuit Court of Cook County. Judge Linn sentenced Petitioner to a term of imprisonment of twenty-eight years, and he is currently incarcerated at Danville Correctional Center in Danville, Illinois, in the custody of the warden of that facility, Respondent Victor Calloway. Petitioner now challenges both his conviction and his sentence. For the reasons explained below, the Court denies the petition and declines to issue a certificate of appealability.

## I.    LEGAL STANDARD

Federal review of state court decisions under § 2254 is limited. With respect to a state court's determination of an issue on the merits, habeas relief can be granted only if the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law," or "was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); *Harrington v. Richter*, 562 U.S. 86, 100 (2011). This Court presumes that the state court's account of the facts is correct, and Petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see Coleman v. Hardy*, 690 F.3d 811, 815 (7th Cir. 2012).

State prisoners must give the state courts "one full opportunity" to resolve any constitutional issues by "invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). If a petitioner asserts a claim for relief that he did not present in the first instance to the state courts, the claim is procedurally defaulted and "federal courts may not address those claims unless the petitioner demonstrates cause and prejudice or a fundamental miscarriage of justice if the claims are ignored." *Byers v. Basinger*, 610 F.3d 980, 985 (7th Cir. 2010).

II.    FACTUAL BACKGROUND & PROCEDURAL HISTORY

This Court begins by summarizing the facts and procedural posture from the state court record. This summary is drawn from the state court record. This Court presumes that the state court's factual determinations are correct for the purposes of habeas review as Petitioner has failed to present any clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1).

A.    Trial

On the evening of November 24, 2009, Terrell Cobbs (Petitioner) shot and killed Greg Hampton (Victim) in the stairwell of a three-flat apartment complex at

3428 West Douglas in Chicago, Illinois. The Petitioner, his girlfriend Lichelle Hassell, and her children shared the second-floor apartment; the Victim, his girlfriend Jeanace Evans, and their children shared the third-floor apartment. Record [13-14] at 73-74. Prior to the shooting that same evening, Evans had knocked on the back door of the second-floor apartment to alert Petitioner and Hassell to a small fire on the back porch. Evans testified at trial that she had seen the fire as she was taking out her garbage. *Id.* at 75. According to both Evans and Petitioner, an argument ensued and Evans left the porch. A second altercation occurred at the Petitioner's front door later that same evening. Petitioner and Hassell testified that Evans knocked on the front door, began to argue with the Petitioner and hit the Petitioner, who then hit Evans in response. Record [13-14] at 95-97; [13-15] at 34. Evans testified that Petitioner came out of his second-floor apartment as she was walking to the third floor, began arguing with her, and struck her in the face. Record [13-14] at 74-79. According to their respective testimony, both Hassell and Evans, independent of each other, called the police after the incident. *Id.* [13-14] at 79; [13-15] at 33. Evans also claimed to have called her mother and the Victim, and then waited in front of the building with her children. *Id.* [13-14] at 79-80.

After the police arrived and began taking Evans' statement, the Victim arrived and, upon seeing Evans' physical condition, went to the Petitioner's second-floor apartment. Hassell testified that the Victim proceeded to kick in the second-floor apartment door and threaten to "get" the Petitioner, Hassell, and her children,

at which point Hassell called the police. Record [13-15] at 35-36. Defense counsel published Hassell's second 911 call; and the recording contained background noise consistent with a door being hit. *Id.* at 36-37. Hassell and Evans also testified that Hassell yelled out her window to the police while they were still interviewing Evans. The Victim then ran out of the apartment as the police ran in. *Id.* at 39, 75-76. Petitioner testified that he was hiding in the back-bedroom closet of the second-floor apartment during this incident. *Id.* at 101. The responding officer later testified that the door was off its hinges and would not stay closed, requiring Petitioner and Hassel to push a table against the door to keep it shut. *Id.* at 76.

Evans' brother Lacy Moore and his girlfriend Ashley Smith testified that the Victim, after leaving the apartment, came to pick them up, along with Evans' mother. Record [13-14] at 116-17, 148-49. The testimony of the witnesses, however, differs regarding what happened after the Victim and Evans' family returned to 3428 West Douglas. Moore and Smith testified that when they arrived, Evans' mother went into the apartment while they waited for the Victim to turn off his truck. *Id.* at 118, 151-52. After he did so, the Victim then entered the apartment, with Moore and Smith following. *Id.* When the three arrived at the second floor, the Victim knocked on the door of the second-floor apartment. When Hassell answered the door, the Victim pushed the door slightly open with his shoulder. *Id.* at 120, 153. He then asked whether Petitioner was in the apartment. When Hassell told him that Petitioner was not in, the Victim turned around and began walking up to the third floor. Moore and Smith testified that Petitioner then sprang

out of the front door of the apartment, firing a handgun at the Victim who was by then running up the stairs. *Id.* at 123, 173.

Hassell testified that she and Petitioner watched from the front bedroom window as the Victim and the others got out of two vehicles in front of 3428 West Douglas. Record [13-15] at 41. She testified that her children were in the bedroom with her when the Victim came to their front door and, without knocking, again kicked in the apartment door and entered the apartment. *Id.* at 41. She then shut the door to the front bedroom and called the police, while the Petitioner hid in the back bedroom closet. *Id.* at 44. Hassel testified that she was behind the front bedroom door and did not see the shooting. *Id.* at 41. On cross examination, however, she testified that she at no time saw the Victim holding a gun. *Id.* at 60. She also admitted that she had given police a statement that she had seen the Petitioner running toward the front door with a gun after the Victim had already turned to leave the apartment. *Id.* at 65.

Petitioner testified to seeing the Victim and others exit two vehicles in front of 3428 West Douglas. He testified that he was afraid, so he hid in the closet of the back bedroom and told Hassell to hide with the children. *Id.* at 109. He also testified to hearing the Victim enter the apartment and threaten Hassell and her children. *Id.* at 110. Petitioner claimed to have heard Hassell scream and run toward the back of the apartment, at which time he grabbed a gun kept in Hassell's purse, exited the closet, and then stood by the front door. *Id.* at 110-11. The Victim turned toward the Petitioner, and with his right hand hidden in his front hoodie

pocket, threatened Petitioner and began advancing toward him. Petitioner testified that he believed the Victim may have had a gun or a weapon, and so began firing at the Victim. Petitioner testified that he closed his eyes until he heard a "click" from the gun, suggesting he was out of ammunition. *Id*. at 113-14. Petitioner then opened his eyes and saw the Victim running up the stairs. *Id*.

Petitioner then fled from the apartment complex to his mother's house at 2950 Harrison, where he found his brother and a woman, Rashida Green. The parties stipulated that, if called, Rashida Green would testify that she was with Petitioner's brother in bed when Petitioner barged into the room and that she saw Petitioner place a handgun, wrapped in a towel, in a bathroom light fixture. *Id*. at 16. The Petitioner was later arrested at that location and the gun was recovered from the light fixture. *Id*. at 11-12, 15-16.

At trial, Petitioner's attorneys stipulated as to the testimony of the Cook County Medical Examiner ("ME") concerning his examination of the Victim, and they did not object to the state's admission of the ME's report into evidence. *Id*. at 28-29. The stipulation and report indicated that the Victim had been shot six times, with bullets entering the right side of his back, the lateral right side of his chest, the lateral right of his abdomen, his anterolateral right forearm, his anterolateral right thigh, and his lateral right thigh. Record [13-16] at 72-75. The bullet that hit the Victim in the right side of the back moved back to front, while the other five bullets traveled either from right to left; right to left and back to front; or right to left, back to front, and upward. *Id*. Petitioner's attorneys did not call the medical

examiner as a witness at trial and argued in closing argument that the locations of the gunshot wounds remained consistent with Petitioner's testimony. Record [13-15] at 160-61.

Also at trial, the State called Chicago Police Forensic Investigator Peter Larcher. Larcher testified that he observed and examined the scene at 3482 West Douglas the night of the incident and found "a fired bullet" "on the second-floor landing." Record [13-14] at 181. During her rebuttal closing argument, the prosecutor summarized the physical evidence supporting the state's theory, and, in doing so, stated that the forensic investigators had found a "bullet casing on the first step up from the second floor landing" and a bullet hole in the wall. Record [13-15] at 166-67.

At trial, Petitioner raised the affirmative defense of "defense of domicile." The trial judge rejected this defense and found him guilty of second-degree murder. Specifically, the court accepted the testimony of Evans, Smith, and Moore while noting the contradictions between Petitioner's testimony, Hassel's testimony, and the physical evidence. In finding Petitioner guilty, Judge Linn stated:

> [Petitioner's] version about the self-defense and how it happened, where it happened, it's not exactly consistent with the evidence in this case, particularly from other witnesses and from the coroner about where the gunshots were fired, and I didn't believe everything [Petitioner] was saying.

Record [13-15] at 181. The Judge noted that this was "a close case, close insofar as whether it's first degree murder or second degree murder." *Id.*; [13-15], p. 192-93. But he also noted that there "is not a prayer in the world that this is in any way justifiable or commendable by Mr. Cobbs." *Id.* Accordingly, Judge Linn found that

the State had met its burden of proof as to the offense of second degree murder, and he found Cobbs guilty of that. *Id.* at 182.

At Petitioner's sentencing hearing, the court recognized that because of his five prior felony convictions, which included two Class One felony convictions, Petitioner was Class X mandatory. *See* Record [13-15] at 188-89; [13-16] at 125, 130. The court sentenced Petitioner to 28-years imprisonment, toward the higher end of the six-to-thirty year range. Record [13-15] at 188, 191, 194.

B.     Direct Appeal

Petitioner appealed his conviction and sentence, claiming that: "1) the State failed to prove his guilt beyond a reasonable doubt; 2) his sentence was excessive given the presence of mitigating factors and his rehabilitative potential; and 3) his mittimus should be corrected to reflect only one conviction and sentence for second degree murder." *People v. Cobbs*, 2013 WL 4536708 at *1 (Ill. App. Ct. Aug. 23, 2013). The Illinois Appellate Court affirmed Petitioner's conviction, specifically finding that the State had met its burden of disproving Petitioner's affirmative defenses and that Petitioner's 28-year sentence was within the Class X range and not excessive. *Id.*, at *9-12. The court did, however, correct Petitioner's mittimus. *Id.* at *9.

Petitioner then filed a petition for leave to appeal, arguing that the court should clarify "whether an Illinois resident may use deadly force to protect his home and its occupants from a violent assault of another, where he reasonably perceives an assault." Record [13-5] at 14. More specifically, Petitioner argued that the

appellate court erred in finding that the trial court had rejected Petitioner's testimony that the Victim violently and unlawfully entered his residence. *Id*. at 3. Petitioner emphasized the trial judge's comments that "[m]aybe Mr. Hampton might have punched him for punching Mr. Hampton's girlfriend, but that's the most that was out there and the [Petitioner] responded by shooting him multiple times." Record [13-15] at 193. Petitioner also asked the Illinois Supreme Court to issue a supervisory order "directing the Appellate Court to re-consider whether [Petitioner] was justified in using deadly force in light of the trial court's finding that [the Victim] violently and unlawfully entered [Petitioner's] apartment intending to assault [him]." Record [13-5] at 19. The Illinois Supreme Court subsequently denied the petition. *People v. Cobbs*, 3 N.E.3d 797 (Ill. 2014) (Table).

C.    Post-Convictions Proceedings

The Petitioner next filed a *pro se* petition for post-conviction relief claiming his counsel was ineffective for: (1) stipulating to the location and nature of the Victim's gunshot wounds and failing to object to the admission of the medical examiner's report; and (2) failing to call the medical examiner as a witness to test the credibility of the crime scene evidence. Additionally, Petitioner claimed that the State committed prosecutorial misconduct by mischaracterizing the "fired bullet" found on the second-floor landing as a "bullet hole." The Petitioner also claimed that the State failed to disprove beyond a reasonable doubt Petitioner's affirmative defense of "defense of domicile." Lastly, the Petitioner claimed that his sentence of twenty-eight years was excessive for second-degree murder given his history as a

non-violent offender. Record [13-6] at 2-4. The court determined that the claims lacked merit and denied Petitioner's post-conviction petition in its entirety. Record [13-7] at 19.

Petitioner appealed this decision to the Illinois Appellate Court with the assistance of appointed counsel. After filing the appeal, Petitioner's appointed appellate counsel moved to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987), indicating that, in counsel's view, the appeal was without merit. In a summary order, the Illinois Appellate Court granted the motion to withdraw and affirmed the order of the trial court. Record [13-10] at 2.

Petitioner then filed a *pro se* petition for leave to appeal, claiming "(1) that [at] trial [Petitioner] was denied the effective assistance of counsel and denied his right to confront a witness against him because trial counsel agreed to stipulate to the testimony of a medical examiner, (2) the prosecutor misstated evidence during closing arguments, [and] (3) his sentence violates the proportionate penalties clause." Record [13-13] at 3. The Illinois Supreme Court denied this petition as well. *People v. Cobbs*, 60 N.E.3d 876 (Ill. 2016) (Table).

III.   ANALYSIS OF PETITIONER'S FEDERAL HABEAS CORPUS CLAIMS

On November 4, 2016, Petitioner filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Here, Petitioner raises four claims, the third of which includes three sub-claims. They are as follows:

Claim One: the State failed to disprove beyond a reasonable doubt Petitioner's affirmative defense, [1] at 14;

Claim Two: the Petitioner's sentence was excessive, *Id*. at 15;

Claim Three: Petitioner's trial counsel was ineffective for (1) stipulating to the location of the Victim's bullet wounds, (2) failing to object to the admission of the state's medical examiner's report and (3) failing to call the medical examiner as a witness, *Id*. at 15-17; and

Claim Four: the State's prosecutor engaged in misconduct by misstating evidence in the closing arguments, *Id*. at 17.

A.      Claim One: Failure to Disprove Petitioner's Affirmative Defense

Petitioner claims that the State failed to disprove his affirmative defense beyond a reasonable doubt. Specifically, in effort to show that the Petitioner was in reasonable apprehension of an assault, Petitioner points to trial testimony establishing that the Victim had previously threatened Petitioner's girlfriend and her children and had entered his home. *Id*. at 14. Similarly, Petitioner claims that the trial court found aspects of his testimony credible, and did not totally reject it as the appellate court suggested. *Id*. In support of his claim, Petitioner refers to an excerpt of the transcript of his sentencing hearing in which the judge remarked "[m]aybe [the Victim] might have punched [Petitioner] . . . but that's the most that was out there and the [Petitioner] responded by shooting him multiple times." *Id*. at 23. Whatever the trial court found on this issue, however, claim one is not legally cognizable.

Habeas review is limited to violations of the "Constitution, law, or treaties of the United States." 28 U.S.C. § 2254(a). Thus, while a violation of a federally protected right may be subject to habeas review, a violation of a state law protected right is not. Illinois state law recognizes that a person is justified in his use of force against another in defense of a dwelling when he "reasonably believes that such

conduct is necessary to prevent or terminate such other's unlawful entry into or attack upon a dwelling." 720 ILL. COMP. STAT. 5/7-2. Furthermore, the use of deadly force may be justified when a person "reasonably believes that such force is necessary to prevent an assault upon, or offer of personal violence to, him or another then in the dwelling." *Id*. Finally, once a defendant raises an affirmative defense, Illinois law places the burden on the State to disprove the elements of the defense, as well as the element of the underlying crime, beyond a reasonable doubt. *People v. Lee*, 821 N.E.2d 307, 311 (Ill. 2004).

The federal Constitution, on the other hand, has no such requirement. As the Supreme Court has held:

> While the Government must prove beyond a reasonable doubt "every fact necessary to constitute the crime with which [the defendant] is charged," *In re Winship,* 397 U.S. 358, 364 (1970), "[p]roof of the nonexistence of all affirmative defenses has never been constitutionally required," *Patterson v. New York,* 432 U.S. 197, 210 (1977). The State is foreclosed from shifting the burden of proof to the defendant only "when an affirmative defense *does* negate an element of the crime." *Martin v. Ohio,* 480 U.S. 228, 237 (1987) (Powell, J., dissenting). Where instead it "excuse[s] conduct that would otherwise be punishable," but "does not controvert any of the elements of the offense itself," the Government has no constitutional duty to overcome the defense beyond a reasonable doubt. *Dixon v. United States,* 548 U.S. 1, 6 (2006).

*Smith v. United States*, 568 U.S. 106, 110 (2013).

In *Ellis v. Butler*, the petitioner was convicted after a bench trial of shooting another man in the back in a dispute over drug territory; petitioner challenged his conviction, claiming, among other things, that he had acted in self defense and that

the trial judge had misapplied Illinois' self defense law.  No. 15 C 2240, 2015 WL 8988712, at *1-2 (N.D. Ill. Dec. 16, 2015).  The court found that the petitioner's claim regarding self defense was noncognizable:  "Because disproving self defense is not required by the federal constitution as it [is] not an element of Illinois' murder statute, Petitioner's argument that the prosecution failed to disprove his self defense claim beyond a reasonable doubt raises a non cognizable issue of state law." *Id*.  *See also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions").

As in *Ellis*, here, there is no dispute that Petitioner shot and killed the Victim.  Although Petitioner raised the affirmative defense of defense of domicile, that defense, like the self defense claim raised in *Ellis*, remains a creature of state law; the federal constitution does not require the state to disprove the defense beyond a reasonable doubt.  As a result, the Petitioner's first claim is not legally cognizable on habeas review and fails.

B.    Claim Two: Excessive Sentence

Petitioner's second claim is that his sentence of twenty-eight years for second-degree murder is unconstitutionally excessive.  [1] at 15.  Specifically, Petitioner points out that the statutory sentencing range for second-degree murder is four to fifteen years, and he alleges that the Class X sentencing is inappropriate given his history as a non-violent offender and his potential for rehabilitation.  *Id*.  The Due Process Clause does protect against *grossly* disproportionate sentences.

But challenges to a sentence that otherwise remains within statutory limits, in the absence of evidence that the trial court lacked the jurisdiction to impose it or that the conviction itself was unconstitutional, simply are not cognizable on habeas review." *United States ex rel. King v. Cahill-Masching*, 169 F. Supp. 2d 849, 855 (N.D. Ill. 2001) (citing *United States v. Addonizio*, 442 U.S. 178, 186 (1979)).

When Petitioner was sentenced, the applicable Illinois law defined second-degree murder as a Class One felony. 720 ILL. COMP. STAT. 5/9-2(d) (eff. July 21, 1987-Dec. 31, 2009). At the time, 730 ILL. COMP. STAT. 5/5-5-3(c)(8) (eff. Aug. 13, 2009-Dec. 2, 2009), which is currently codified as 730 ILL. COMP. STAT. 5/5-4.5-95(b), required Class X sentencing on Class One felony convictions where the offender had two prior Class Two or greater class felony convictions.[1] Class X felony convictions, then as now, had a sentencing range of six to thirty years imprisonment. 730 ILL. COMP. STAT. 5/5-4.25-25(a) (eff. July 1, 2009-June 21, 2012). As noted during Petitioner's sentencing hearing, and by the trial and appellate courts, Petitioner was a five-time convicted felon with two prior Class One convictions and was therefore Class X mandatory for sentencing purposes. *People v. Cobbs*, 2013 WL 4536708 at *7 (Ill. App. Ct. Aug. 23, 2013); Record [13-15] at 188-89, 194. Petitioner's sentence was clearly within the statutory range.

In *United States ex rel. King v. Cahill-Masching*, the petitioner filed a habeas petition claiming her twenty-year sentence for attempted murder was excessive.

---

[1] Class One felonies are considered greater offenses than Class Two felonies. Pursuant to Illinois law, Class One felonies carry sentences ranging from not less than four years to no more than fifteen years, while Class Two felonies carry sentences ranging from not less than three years to no more than seven years. 720 ILL. COMP. STAT. 5/5-4.5-30(a); 5/5-4.5-35(a).

169 F. Supp. 2d 849, 852 (N.D. Ill. 2001). In *King*, the petitioner had been convicted of attempted first-degree murder after shooting the victim in the leg. *Id.* The trial court sentenced the petitioner to twenty years from a possible range of six to thirty years. Citing Seventh Circuit precedent, the court there noted that the severity of a sentence was not subject to habeas review unless it was: (1) the result of the trial court relying on *improper criteria* or *unreliable information*; and (2) *grossly* disproportionate. *Id.*, 169 F. Supp. 2d at 855; s*ee also United States ex rel. Sluder v. Brantley*, 454 F.2d 1266 (7th Cir. 1972) ("The sentence was severe, but that is not to say that it had a federal constitutional infirmity. The penalty was within the limits set by Illinois law, and its severity is not sufficient grounds for relief on federal habeas corpus."); *United States v. Vasquez*, 966 F.2d 254 (7th Cir. 1992) ("[a] reviewing [court] may not change or reduce a sentence imposed within the applicable statutory limits on the ground that the sentence was too severe unless the trial court relied on improper or unreliable information in exercising its discretion or failed to exercise any discretion at all in imposing the sentence," quoting *United States v. Flemming*, 671 F.2d 1002, 1003 (7th Cir. 1982) (internal quotations omitted)); *United States v. Simpson*, 8 F.3d 546 (7th Cir. 1993).

Here, as in *King*, there is no evidence that the trial court relied on any improper criteria or unreliable information. At trial, there were two competing narratives of how the shooting occurred: one put forth by Petitioner and Hassel, and the other put forth by Evans, Moore, and Smith. As noted by the appellate court, the judge, as the trier of fact, was entitled to accept the version of the facts testified

15

to by Evans, Moore, and Smith over the testimony of the Petitioner. *Cobbs*, 2013 WL 4536708 at *8. Nor has Petitioner shown that the court relied upon any improper or unreliable information. Because Petitioner's sentence falls within the statutory range, and is not based upon improper or unreliable information, Petitioner's second claim is not cognizable here.

Additionally, even if Petitioner's claim was cognizable, his sentence is not grossly disproportionate in light of the circumstances. The court in *United States ex rel. Donner v. Akpore*, addressed a similar habeas claim; there, the petitioner was convicted of burglary and sentenced to seventeen years in prison. No. 14 C 1349, 2015 WL 1942851 at *1 (N.D. Ill. Apr. 28, 2015). The relevant sentence for burglary was three to seven years imprisonment, but as a Class X offender the petitioner faced a statutory sentencing range of six to thirty years. *Id.*, at n.1. Consistent with this scheme, the court sentenced Donner to seventeen years. Donner later challenged the sentence on habeas review, arguing that "his sentence was 'disproportionate' to his crime, and constitute[d] 'cruel and unusual punishment' . . . [and was] 'excessive in light of the charge,' and that it 'serve[d] no penological interest.'" The court held that, even though the claim was potentially cognizable because it sufficiently implicated the Eighth Amendment's prohibition on cruel and unusual punishment, the claim still failed on the merits because petitioner's sentence fell well within the Illinois statutory range and because he was a repeat offender. *Id.* at *5. As a result, any challenge to the proportionality of his particular sentence was rejected. *Id.*

The Eighth Amendment's prohibition on cruel and unusual punishment does not prohibit all disproportionate sentences, but only grossly disproportionate sentences. When reviewing whether a particular sentence is grossly disproportionate under the Eighth Amendment, the Supreme Court has consistently recognized that significant deference is due state legislatures. In *Rummel v. Estelle*, the Supreme Court held that for "crimes concededly classified and classifiable as felonies, that is, as punishable by significant terms of imprisonment in a state penitentiary, the length of the sentence actually imposed is purely a matter of legislative prerogative." 445 U.S. 263, 274 (1980). The court later modified this standard in *Solem v. Helm* where it held that while "substantial deference" should be given to legislatures, no penalty is "*per se* constitutional." 463 U.S. 277, 290 (1983). Rather, the court's analysis should be guided by objective factors including the gravity of the crime, the harshness of the penalty, and the sentence for similar offense in that and other jurisdictions. *Id*. at 291. The Seventh Circuit, after reiterating that no penalty is per se constitutional, has emphasized that "substantial deference is due the legislatures and sentencing courts"; when considering an Eighth Amendment challenge to a sentence, courts should overturn "only the occasional 'manifestly unjust' sentence." *United States v. Sato*, 814 F.2d 449, 453 (7th Cir. 1987), quoting *Hutto v. Davis*, 454 U.S. 370, 377, reh'g denied, 455 U.S. 1038 (1982)).

The court in *United States ex rel Durham v. O'Leary* considered a habeas petition challenging the automatic sentencing provision of the Illinois Habitual Offenders Act under the Eighth Amendment. After noting that "[a] legislative decision on the appropriate type and duration of punishment is due substantial deference," the court in *Durham* found that petitioner's sentence of natural life without parole for a conviction of attempted murder did not violate the Eighth Amendment. 685 F. Supp. 1051, 1055 (N.D. Ill. 1988). Recognizing the legislature's determination that the state's interest in protecting citizens from violent, recidivist offenders outweighed possible mitigating factors regarding the offender's blameworthiness, the court stated that it saw "no principled or mandated reason for denying the legislature the substantial deference presumed appropriate, notably in the context of recidivist offenders." *Id.* at 1055.

Petitioner's claim likewise must fail on its merits. Just as the court recognized in *Durham* and *Akpore*, there is no principled reason to disregard the Illinois legislature's intent to increase sentences for repeat offenders; nor is Petitioner's sentence grossly disproportionate to the severity of the crime he committed when he intentionally shot the victim Greg Hampton to death. In short, Petitioner's sentence is within the statutory range and it is not manifestly unjust. Petitioner's second claim is denied.

C.    Claim Three: Ineffective Assistance of Counsel

Petitioner's third claim is that his trial counsel was unconstitutionally ineffective for failing to object to the admission of the medical examiner's report, for

18

stipulating to the location and direction of the Victim's bullet wounds, and for failing to call the medical examiner as a witness. On appeal, the court summarily rejected the Petitioner's claim of ineffective assistance of counsel, finding that it contained "no issues of arguable merit." Record [13-10] at 2. This Court agrees.

Despite labelling his current challenge as one involving "ineffective assistance of counsel," Petitioner initially characterized this claim as a violation of the Sixth Amendment's Confrontation Clause. [1] at 16. ("That counsel violated the Confrontational [sic] Clause of the Sixth Amend. right to cross-examine the witness against him.") Clearly, any such a Sixth Amendment claim fails. As the Supreme Court noted in *Crawford v. Washington,* the Confrontation Clause requires only the *opportunity* to cross a witness, not that the cross actually occurs. 541 U.S. 36 (2004). Here, the crux of Petitioner's claim is that his trial counsel was unconstitutionally ineffective for failing to call a witness and for stipulating to certain evidence; he does not argue that he was actually denied the opportunity to cross examine this evidence.

When properly construed as an ineffective assistance of counsel claim, Petitioner's theory still lacks merit. The Supreme Court in *Strickland v. Washington* held that to prevail on a claim of ineffective assistance of counsel, a petitioner must show "that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and "that the deficient performance prejudiced the defense," 466 U.S. 668, 687 (1984). This requires showing that counsel's errors were "so serious as to deprive the defendant of a fair trial, a trial

whose result is reliable." *Id*. As a result, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

To prevail on a claim of ineffective assistance of counsel on habeas review, a petitioner must clear an even higher bar. On habeas review, this Court must determine whether the state court's application of the ineffective assistance of counsel standard was unreasonable, not whether defense counsel's performance fell below *Strickland*. *See Harrington v. Richter*, 562 U.S. 86, 101 (2011). Finding a state court's application of *Strickland* to be unreasonable requires a showing of "clear error." *Allen v. Chandler*, 555 F.3d 595, 600 (7th Cir. 2009). As the Supreme Court articulated, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 129 (2009) (quoting *Schriro v. Landigan*, 550 U.S. 465, 473 (2007)). In general, there is a "strong presumption" that counsel performed effectively. *Allen*, 555 F.3d at 600. When the state appellate court issues a summary order without any reasoning, as it did here, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded agreement." *Harrington*, 562 U.S. at 103.

Petitioner cannot meet this burden. To begin, as Respondent noted in his answer to the petition, certified autopsy reports are clearly admissible under the Illinois Rules of Evidence. *See People v. Leach*, 980 N.E.2d 570, 582 (Ill. 2012). Because the medical reports were admissible, the location of the bullet wounds could easily have been established without the stipulation, or, in the absence of defense counsel's agreement, it could have been established with live testimony which would have only highlighted the damaging testimony for the trier of fact. As the Seventh Circuit noted in *Hough v. Anderson*, failing to object to admissible evidence does not satisfy *Strickland*. "[F]ailing to object to admissible evidence cannot be a professionally 'unreasonable' action, nor can it prejudice the defendant against whom the evidence was admitted. *Hough v. Anderson*, 272 F.3d 878, 898 (7th Cir. 2001). Furthermore, this Court agrees with the Respondent that there is nothing in the record to suggest that the reports were inaccurate or unreliable. In short, the stipulation merely shortened the admission of evidence that would otherwise have been admitted anyway.

Nor has Petitioner explained how the outcome of the trial would have been different if the ME had been called as a live witness or if counsel had not stipulated to what the ME's testimony would have been. As Respondent noted, there were many legitimate strategic purposes for not requiring the State to call the medical examiner to the witness stand, such as avoiding negative live testimony. Furthermore, the trial judge at Petitioner's post-conviction hearing stated:

> "I do not see - - I can not [sic] fathom how stipulating to
> that which the medical examiner saw is going to change

21

anything.  It wasn't going to change the testimony, I don't believe.  And I didn't feel that was - - It was consistent with all the other evidence in the case, including Mr. Cobbs' own testimony."

Record [13-7] at 18.  The appellate court's decision to reject Petitioner's *Strickland* claim was reasonable and not clearly erroneous.  Therefore, claim three fails.

    D.    <u>Claim Four: Prosecutorial Conduct</u>

Petitioner's fourth and final claim is that the state prosecutors engaged in misconduct by mischaracterizing the forensic investigator's testimony during closing arguments.  Specifically, Petitioner refers to the prosecutor's claim that the medical examiner testified to finding a "bullet casing" when he had actually testified to finding a "fired bullet."  This Court rejects claim four as meritless.

To prevail on a claim of prosecutorial misconduct, a petitioner must show that the conduct in question prevented him from receiving a fair trial.  As the Seventh Circuit has held, "to constitute a direct violation of the Fourteenth Amendment, the prosecutor's comment must have been . . . so egregious that it deprived the defendant of a fair trial, thus making the resulting conviction a denial of due process."  *U.S. ex rel. Shaw v. De Robertis*, 755 F.2d 1279, 1281 (7th Cir. 1985).  In determining whether a particular comment crosses the line, courts consider: (1) whether the prosecutor misstated the evidence; (2) whether the remarks implicate specific rights of the accused; (3) whether the defense invited the response; (4) the trial court's instructions; (5) the weight of the evidence against the defendant; and (6) the defendant's opportunity to rebut."  *Howard v. Gramley*, 225

F.3d 784, 793 (7th Cir. 2000) (citing *Darden v. Wainwright*, 477 U.S. 168, 181-182 (1968)).

Based upon the record in this case, no prosecutorial misconduct occurred. Any distinction between referring to the item as a "fired bullet" or "bullet casing" means nothing within the context of the evidence presented at trial. Here, there was no dispute that the bullet had been fired and that evidence of the firing was found in the cited location. Without question, the statement (mistaken or not) did nothing to undermine the fairness of Petitioner's trial. As such, in harmony with the prior state court rulings, this Court rejects the Petitioner's last claim.

## IV.   CERTIFICTE OF APPEALABILITY

Under § 2253(c)(2), a "certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." An applicant has made a "substantial showing" when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Resendez v. Knight*, 653 F.3d 445, 446-47 (7th Cir. 2011) (internal citations and quotation marks omitted). Here, the Court concludes that the Petitioner has not made a substantial showing of the denial of a constitutional right, nor has he shown that reasonable jurists would debate the resolution of his claims. Accordingly, the Court declines to issue a certificate of appealability.

V.    CONCLUSION

For the reasons explained above, the Court denies Petitioner's habeas corpus petition [1] on the merits. The Court declines to issue a certificate of appealability. The Clerk is instructed to enter a judgment in favor of Respondent and against Petitioner. Civil case terminated.

Dated:  October 23, 2017

ENTERED:

John Robert Blakey
United States District Judge